**Affirmed as Modified and Opinion Filed August 28, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**Nos. 05-22-00318-CR,**

**05-22-00319-CR**

**ROYNECO TIUN HARRIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1975527-R, F19-75498-R**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Partida-Kipness

In four issues, appellant Royneco Tiun Harris challenges his convictions for murder and aggravated assault arguing the evidence was insufficient to support the convictions. Harris also asks this Court to reform the judgments. The State raises a cross-appeal issue asking us to additionally modify the judgments. We affirm as modified.

# BACKGROUND

Harris was convicted of the death of Clifton Norton and the aggravated assault of his son, K.N.[1] *See* TEX. PENAL CODE §§ 19.02(b)(1)–(2); 22.02(a)(1)–(2). Harris and Clifton had known each other since junior high. Harris and Jennifer Norton, Clifton's sister, were neighbors, and Clifton's mother, Mary Davis, stated she practically raised Harris. Davis identified Harris's nickname as "Slim." Davis described Harris and Clifton as having an on-going disagreement regarding a vehicle Harris had purchased from Clifton. Harris had paid Clifton some of the money owed on the vehicle, but not the full amount. At some point, the vehicle was towed and Harris blamed Clifton.

Jennifer confirmed Clifton and Harris's feud was over a vehicle Clifton had sold Harris. She said she knew Harris's vehicle had been towed but did not know who towed it. A week before Clifton's murder, Harris "busted" into Jennifer's house extremely angry, demanding to know where Clifton was. Harris believed Clifton had towed the car. Harris and another male left and went to Clifton's home, but he was not there. Jennifer stated she followed Harris to make sure nothing happened between the men. Later the same day, Clifton arrived at Jennifer's house with Davis and the two men got in each other's faces. During this altercation, Clifton pulled out a handgun and pointed it at Harris's chest. Harris was also carrying a handgun at the

---

[1] To protect the identity of the minor complainant, we use initials or pronouns to identify him. *See* TEX. R. APP. P. 9.8(b)(2).

time but did not point it at Clifton. Bystanders intervened, and the men finally cooled off and returned to their homes without further incident. Clifton's family believed the incident resolved the issues related to the towed car.

On the evening of March 31, 2019, Dejanique Cooper was at Jennifer's home to drop off K.N. from a weekend playdate with her siblings. Cooper stated when she pulled up to Jennifer's home, she noticed the neighbor's door open and saw a male figure in the doorway but did not think anything of it at the time.

Cooper's best friend was Kristian Garcia, Jennifer's daughter. Garcia said K.N. waited at her house for Clifton to pick him up. She was not sure of the exact time Clifton arrived, but knew it was dark outside. After K.N. gathered his belongings, she walked him outside to Clifton's waiting vehicle. Clifton's driver side was facing her house. Before her hand released the doorknob after walking inside, Garcia heard five gunshots. She heard the neighbor's front door open and close right as she went inside her house. She thought the gunshots sounded close, and worried her house was being shot at. Garcia opened her front door again to see Clifton "driving in a circle" and coming back towards her house. Clifton crashed into the house and Garcia saw him climb out of the vehicle holding his neck. Clifton stumbled into her house and fell on the ground. Garcia stated Clifton was trying to talk but was not able to. She noticed he drew an "S" in a pool of blood on the floor. As people in the house tended to Clifton, Garcia's brother noticed K.N. had been shot in the leg.

According to Jennifer's testimony, K.N. was dropped off at her house around 10:30 p.m.  She recalled hearing five to six gunshots as soon as Garcia returned back inside from walking K.N. out. As she ran outside, she saw Clifton drive up the street, drive around a tree, and head straight towards them. Clifton crashed into the house, and Jennifer ran to the car as Clifton got out staggering and holding his neck. She said Clifton pointed to his neck and said "Slim." Jennifer described Clifton as saying "Slim" multiple times. As he staggered into her home, Clifton sat on the couch and then fell to the floor. In a puddle of blood, he wrote the letter "S" and told her he was not going to make it. She held him in her arms until emergency personnel arrived. Jennifer later learned Clifton had died.

Eleven-year-old K.N. testified regarding the events of March 31, 2019. He stated he was seated in the front passenger seat as Clifton drove off, and he remembered hearing the window break and loud noises. He said this happened while Clifton was driving and he hid under his coat to protect himself. K.N. testified they were still close to Jennifer's house and Clifton ended up crashing into the house with the car. K.N. did not realize he had been shot until his cousin pointed it out to him.

Heather Thomas, the firearms examiner, examined a single bullet casing found at the scene, a bullet found lodged in K.N.'s jacket, and a projectile recovered from Clifton's body. She was able to determine they had the same class characteristics–.38 caliber–and were fired from a gun with eight lands and grooves with a right twist. Thomas testified she was unable to determine whether the same

–4–

gun fired the bullet casing and bullet recovered from the coat, and no gun was recovered to compare them with. The Dallas County medical examiner testified to Clifton's manner of death as a homicide and stated the bullet went through his trachea and carotid artery. Although he surmised Clifton expired quickly, he did state it would have been possible for him to speak immediately after being shot.

Dallas Police Department Detective Chris Walton explained to the jury how he determined Harris killed Clifton. At the scene, he learned another officer had spoken to Harris on the phone and asked him to return to his home, but Harris never returned. A few days later, Harris came into the police station and gave a statement. Harris said he and his son had gone to the barber, then the family went to Wal-Mart, and he went to visit a friend in Garland on March 31, 2019. However, cell phone records show Harris's phone was in the murder vicinity at the time it occurred. The records also showed he was near the barber and Wal-Mart as he stated earlier in the night, but never went to Garland. Detective Walton explained he believed Harris committed the murder based on the witness statements, inconsistencies in Harris's story, Clifton's dying declaration of "Slim," phone records, and motive. He agreed there was no forensic evidence linking Harris to the murder, and because they did not find the weapon used, there were no projectiles or casings that could be linked to a particular handgun. Detective Walton said Harris's cell phone was never located and he heard Harris carried a revolver which would account for the lack of ballistic evidence at the scene.

After finding Harris guilty and the two enhancement paragraphs true, Harris was sentenced to ninety-nine years' imprisonment for the murder and sixty years' imprisonment for the aggravated assault and this appeal followed.

**ANALYSIS**

**A.     Sufficiency of the Evidence**

In his first two issues, Harris argues the evidence was insufficient to establish identity and support the convictions.

We review a sufficiency challenge by considering all of the evidence in the light most favorable to the verdict and determine, based on the evidence and reasonable inferences therefrom, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). We presume the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to its resolution. *Brooks*, 323 S.W.3d at 922. The fact finder can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence

–6–

alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

The prosecution must prove beyond a reasonable doubt the defendant is the person who committed the offense charged. *Palomo v. State*, No. 05-16-01459-CR, 2018 WL 636105, at *3 (Tex. App—Dallas Jan. 31, 2018, pet. ref'd) (mem. op., not designated for publication). Identity may be proved by "either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2005). The testimony of a single eyewitness may be sufficient evidence to identify a defendant as a perpetrator. *Palomo*, 2018 WL 636105, at *3.

Although there was no forensic evidence tying Harris to Clifton's murder, there was sufficient circumstantial evidence for the jury to believe. The jury heard testimony from multiple family members of an ongoing disagreement between Harris and Clifton over the towed vehicle. There was evidence of the previous altercation between the two men where they both drew their handguns. Witnesses stated they heard Harris's door open and close at different times around the time of the shooting. Jennifer testified to Clifton's dying declaration of "Slim" and of the "S" he drew in his own blood before dying. Detective Walton testified regarding his

investigation and how Harris's story did not line up with the information they knew. Harris's cell phone records put him in the vicinity of the murder scene and also proved he did not travel to Garland, as he told Detective Walton.

Even though a majority of the evidence was circumstantial, it can be as "probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. The jury could make the necessary inferences to establish identity and guilt based upon all of the evidence presented. *See Wise*, 364 S.W.3d at 903. Because we defer to the fact finder, we find the evidence was sufficient to establish identity and support the convictions for the murder of Clifton and the aggravated assault of K.N. *See Winfrey*, 393 S.W.3d at 768. We overrule Harris's first and second issues.

## B.    Reformation of the Judgments

In his third and fourth issue, Harris asks us to reform the judgments. In its cross-issue, the State also asks us to modify the judgments. Harris first requests this Court delete the court costs in No. 05-22-00318-CR because it is duplicative of the court costs assessed in No. 05-22-00319-CR. In his fourth issue, Harris asks this Court to correct the statute listed in No. 05-22-00319-CR. The State agrees with Harris on both issues. Additionally, the State asks us to correct the judgments to properly reflect the statute for the offense, the deadly-weapon findings, Harris's pleas to the enhancement paragraphs, the jury's findings on the enhancement paragraphs, the sentence commencement dates, and Harris's punishment elections.

We have the power to modify a judgment to speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). When there is a conflict between the oral pronouncement of a sentence and the written judgment, the oral pronouncement controls. *Shuler v. State*, 650 S.W.3d 683, 686 (Tex. App.—Dallas 2022, no pet.) (citing *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)). When the oral pronouncement and the written judgment conflict, the remedy is to reform the judgment. *See Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). In our review of the record, we sustain Harris's issues, as well as the State's cross-appeal issue.

Harris first requests we delete the duplicative court costs from one of his two judgments. Each judgment contains a "Criminal Court Fee Docket" which lists multiple fees totaling $340.00. When a defendant is convicted of two or more offenses in a single criminal trial, the trial court may assess each court costs or fee only once against the defendant. TEX. CODE CRIM. PROC. art. 102.073(a). The amount of each fee or cost assessed is determined by using the highest category of offense that is possible based on the defendant's convictions. *Id*. art. 102.073(b). When a trial court imposes duplicative court costs and fees in two or more cases in a single criminal action, the appellate court must delete the court costs and fees assessed in the lower degree offense. *Cates v. State*, 402 S.W.3d 250, 252 (Tex.

Crim. App. 2013) (noting that the proper remedy to rectify the assessment of certain court costs and fees not supported by the record is to delete the improper costs and fees from the order). Harris was convicted of murder and aggravated assault in the same trial–out of a single criminal action. *Shuler v. State*, 650 S.W.3d 683, 690 (Tex. App.—Dallas 2022, no pet.). Therefore, the court costs from No. 05-22-00318-CR should be deleted.

Harris next requests this Court modify the statute listed for the offense in No. 05-22-00319-CR from Texas Penal Code section 19.02(A)(1) to Texas Penal Code section 19.02(b). The correct offense Harris was convicted under was penal code section 19.02(b) and the judgment should be modified accordingly.

The State raises a cross-appeal issue requesting additional modifications of both of Harris's judgments. In No. 05-22-00318-CR, the State alleges the statute of offense is incorrect and should reflect penal code section 22.02(a), instead of penal code section 22.02(A)(2). Additionally, both judgments reflect "N/A" under pleas to the enhancement paragraphs, when Harris actually pleaded "Not True." The judgments also state "N/A" on the jury findings on the enhancement paragraphs instead of the proper finding of "True." The "Punishment Assessed by Jury" section also incorrectly states there was "No Election" and should state "Jury" and the "Date Sentence Commenced" should state April 1, 2022, instead of October 22, 2021, as Harris absconded prior to sentencing. Case No. 05-22-00319-CR also should reflect the finding of a deadly weapon–a firearm, instead of "N/A."

–10–

**CONCLUSION**

Based on the record before us, we sustain Harris's third and fourth issues, sustain the State's cross-appeal issue, and modify the judgments as stated above. We overrule Harris's first and second issues and affirm as modified.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).
220318F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROYNECO TIUN HARRIS,
Appellant

No. 05-22-00318-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1975527-R.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

delete the duplicative court costs, modify the offense section to state "Penal Code § 22.02(a), change the pleas to the enhancement paragraphs from "N/A" to "Not True", change the jury findings to the enhancement paragraphs from "N/A" to "True", change the "Punishment Assessed by Jury" from "No Election" to "Jury", and change the "Date Sentence Commenced" from "October 1, 2021" to "April 1, 2022"

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of August 2023.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROYNECO TIUN HARRIS,
Appellant

No. 05-22-00319-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1975498-R.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

modify the offense section to state "Penal Code § 19.02(b), change the pleas to the enhancement paragraphs from "N/A" to "Not True", change the jury findings to the enhancement paragraphs from "N/A" to "True", change the "Punishment Assessed by Jury" from "No Election" to "Jury", change the "Date Sentence Commenced" from "October 1, 2021" to "April 1, 2022", and change the deadly weapon finding from "N/A" to an affirmative finding of a deadly weapon–a firearm

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of August 2023.